RUFUS STORY *vs.* THE JERSEY CITY AND BERGEN POINT PLANK ROAD COMPANY, and others.

. The Court of Chancery has no power, by injunction, to restrain any citizen from petitioning either branch of the legislature upon any subject of legislation in which he is interested. Such restraint would be an unauthorized abridgment of the political rights of the party enjoined.

2. The proper office of Courts of Justice is to adjudicate upon, and to protect and enforce the legal and equitable rights of parties litigant, as they are established by existing laws. It is no part of their appropriate function to determine in advance, whether a proposed law may or may not be enacted consistently with the rights of parties, or to interfere directly or indirectly with the course of legislation.

3. Where, at the time of the grant of a charter to a corporation, there is a general law of the state, that the charter of every corporation granted by the legislature shall be subject to alteration, suspension or repeal, in the discretion of the legislature, the legislature, in granting such charter, must be deemed to have reserved to themselves the right of altering, suspending or repealing the same, whenever, in their discretion, the public good may require it, as fully as if the reservation were inserted in the charter. And all contracts, express or implied, resulting from the act of incorporation

VOL. I.                                    B

and its acceptance by the stockholders, must be deemed to have been entered into by both parties, subject to that reservation.

4. Whatever limitation may exist to the reserved right of the legislature to alter or repeal a contract, such reservation is in itself valid, and this court ought not, upon a motion for a preliminary injunction, to pronounce any alteration, suspension or repeal of the charter, to be unconstitutional or illegal. Much less should this court make such declaration in advance of any actual legislation.

Under the provisions of the charter of incorporation of the Jersey City and Bergen Point Plank Road Company, *Pamph. Laws*, 1850, *p*. 255, and the supplements thereto, *Laws*, 1851, *p*. 288, and 1860, *p*. 392, and of the charter of incorporation of the Jersey City and Bergen Railroad Company, *Laws*, 1859, *p*. 411, and the supplement thereto, *Laws*, 1860, *p*. 393—

*Held*, that the occupation of a part of the ancient highway on which the plank road is constructed, by the railway, with the consent of the plank road company, without the personal consent of a stockholder, the plank road company having been authorized by the legislature to lay rails upon their road, is no violation of the rights of such stockholder.

*Held also*, that the sale by the plank road company of the whole or a part of their road to the railroad company, without the personal consent of a stockholder, is not such an infringement (if any) of his rights as this court will interfere to restrain by injunction.

*Held further*, that a change of the route of the plank road by authority of the legislature, at the instance of the plank road company, is not a fundamental change of the objects of the company, or a fundamental alteration of the structure thereof, which equity will restrain at the instance of a stockholder.

————

The bill in this cause was filed by Rufus Story, a stockholder in the Jersey City and Bergen Point Plank Road Company, for an injunction to restrain the commission of acts by the company, charged to be prejudicial to the interest of the complainant as a stockholder in said company. The company was incorporated on the 8th of March, 1840, and was authorized to construct a plank road of a specified description, from Grand street, in Jersey City, upon the main road or highway, to Bergen Point. The charter was accepted, the stock subscribed (the complainant becoming a stockholder), the company organized, and the road constructed pursuant to the requirements of the charter and of a supplement thereto, approved on the 14th of March, 1851. The highway over which the plank road was thus constructed, for the

distance of about two miles from the Kill Van Kull to a turn in the road to the west, a few hundred feet north of where the Reformed Dutch Church of Bergen Neck now stands, is part of an ancient highway, laid out and opened three rods wide, in the year 1786.

The Jersey City and Bergen Railroad Company were incorporated by an act approved on the 15th of March, 1859, with power to construct a railroad from some point on the Kill Van Kull, at or near Bergen Point, to the Newark turnpike road, with one or more branches to the ferries in Hudson county, south of Hoboken. They were authorized to purchase any plank road or roads within the limits defined by their charter. They were prohibited by their charter from usuing any other than horse power in running their cars, and from constructing their road within fifty feet of any plank road, without the consent of such plank road company, except to cross the same.

By a supplement to the charter of the plank road company, approved on the 17th of March, 1860, they were authorized to lay iron rails and run cars upon their road, with the proviso, among others, that said rails should be so laid as not to hinder or obstruct the public travel on said road, and also to straighten or widen their road or any part thereof, at their pleasure, on first obtaining the written consent of the owners of the land taken for such straightening and widening. The complainant never personally assented to the last mentioned act, or to the act incorporating the railroad company.

By virtue of the last mentioned act, the promoters of the railway, who had a majority of the stock of the plank road company, and the said plank road company claim to have a right to lay said railway or to allow the railroad company so to do, upon that part of the plank road extending about two miles northward from the Kill Van Kull, and have entered into negotiations and made arrangements for that purpose, and have advertised that application will be made to the legislature, at its next session, for power to alter the route of the plank road and to straighten the same. The pro-

moters of the railway also threaten and intend that the plank road company shall give its consent to the occupation of their road for a railway, or make sale of the plank road or some part thereof for that purpose.

The bill charges that, if the intentions of the two companies and of the persons owning the majority of the stock of the plank road company, but interested in the said railway, are carried out, the object for which the plank road company was created, will, without the complainant's consent, be abandonded, the route of the road altered, and a new route established. That the complainant's funds and the funds of said corporation will not be devoted to the objects of said corporation, but to other and different purposes; the objects and structure of the company will be fundamentally altered; the franchises of the company disposed of and impaired; and thus the contracts between the complainant and the plank road company and the stockholders thereof, and the trusts with which said plank road company is charged, would be violated. That if the legislature shall pass such act as is advertised and intended to be applied for, without the complainant's consent, it would impair the franchise granted to the plank road company and to the complainant as co-stockholder thereof, and would authorize an abandonment of a part of the route of the road. That the capital stock and franchises of the company will, by the state, be diverted from the objects of said incorporation, and the objects and structure of the company fundamentally altered, and thereby the obligation of the contract between the complainant and the state, as well as of the contracts between the complainant and the company and the other stockholders thereof, be impaired. That the conditions upon which the grant of power to lay the railway upon the plank road was made cannot be complied with, inasmuch as the construction and use of said railway upon the plank road, will necessarily hinder and obstruct the travel thereon.

The prayer of the bill is—

1. That the plank road company may be perpetually re-

strained from consenting to the occupation, by the railway, of any part of the plank road; and the railroad company from accepting such consent, without the consent of the complainant and the other stockholders of the plank road company, on whose behalf the bill is filed.

2. That the plank road company may be perpetually enjoined from selling any part of their road to the railroad company; and the railroad company from making such purchase, without the like consent.

3. That the plank road company may be perpetually enjoined from making any application to the legislature for authority to abandon any part of said plank road, or to change fundamentally the objects of said company, or to alter fundamentally the structure of said road, without the like consent; and the railroad company, its officers, stockholders and promoters, from aiding and abetting such application.

4. That the railroad company may be perpetually enjoined from building a railway on said part of said plank road, and from making any excavation therein, or doing any act there for that purpose.

The cause was heard on application for an injunction pursuant to the prayer of the bill, upon the bill, answer and affidavits.

*Gilchrist*, for complainant.

*Zabriskie*, for defendants.

THE CHANCELLOR. Most of the points discussed by counsel upon the hearing, and upon which the decision of the present application in any degree rests, are free from serious doubt or difficulty. At the present stage of the cause they will be disposed of without further discussion, by stating briefly the grounds of the decision.

I am of opinion—

1. That the occupation of a part of the ancient highway on which the plank road is constructed, by the railway, with the consent of the plank road company, without the personal

B *

consent of the complainant, the plank road company having been authorized by the legislature to lay rails upon their road, is no violation of the rights of the complainant, as a stockholder of said company.

2. That the sale by the plank road company of the whole or a part of their road to the railroad company, without the personal consent of the complainant, is not such an infringement (if any) of the complainant's rights as a stockholder, as this court will interfere to restrain by injunction.

3. That a change of the route of the plank road by authority of the legislature, at the instance of the plank road company, is not a fundamental change of the objects of the company, nor a fundamental alteration of the structure thereof, which equity will restrain at the instance of a stockholder.

This disposes of the motion, so far as an injunction is asked to protect the property of the complainant or his rights, from any violation by the acts of the defendants under existing laws.

But the court is further asked, that the plank road company may be perpetually restrained from making any application to the legislature for authority to abandon any part of their plank road, or to alter fundamentally the structure of the said company; and that the said company, its officers and promoters, may be perpetually enjoined from aiding and abetting such application.

This, it is believed, is the first instance in this country, of an application to a court of equity to restrain, by writ of injunction, an application to the legislature for any purpose, either of public or private concern. It is admitted that there is no American precedent for the exercise of such power. This fact in itself, though not decisive, is a persuasive argument against the propriety of its exercise. In England, though applications to parliament have been restrained by injunction, the practice is of very recent origin, and there are but few reported cases of its exercise. It was adopted by Vice Chancellor Shadwell, in 1831, in *Cunliff* v. *The Manchester and Bolton Canal Company,* and in *Ware* v. *The*

*Grand Junction Water Works Company*, 2 *Russ. & M.* 470, *and note.* The former case was compromised without appeal; the latter was reversed on appeal by the Lord Chancellor.

In *The Stockton and Hartlepool Railway Company* v. *The Leeds and Thirsk and The Clarence Railway Companies*, 2 *Phillips* 666, (1848), an injunction was granted by Vice Chancellor Shadwell to restrain a railroad company from opposing a bill brought before parliament by another railroad company, for the amalgamation of the two companies. On appeal the injunction was dissolved upon the merits, though the jurisdiction of the court was maintained by Lord Cottenham.

In *Heathcote* v. *The North Staffordshire Railway Company*, 2 *Macnaghten and Gor.* 100, (1850), an injunction was granted by the Vice Chancellor, restraining the defendants from making application to parliament for any act to authorize them to abandon certain branch railways, or to authorize anything to be done or omitted by the company, inconsistent with, or repugnant to, a covenant entered into by them with the complainant. This injunction was also dissolved by Lord Cottenham upon the merits. In no one of these cases was the injunction restraining a party from making application to parliament, either in support of or in opposition to a bill, finally sustained.

There are a number of cases in which the court have enjoined a corporation having funds for distinct objects, from using them to promote an application to parliament for a fundamental change in their charter. But this, it is obvious, is an exercise of power resting on very different principles. It is simply a restraint upon the corporation of a diversion of its funds from the purposes for which they are held in trust to other and different purposes. *The Attorney General* v. *The Corp. of Norwich*, 16 *Simons* 225; *Munt* v. *The Shrewsbury and Chester Railway Co.*, 13 *Beav.* 1; *Stevens* v. *The South Devon Railway Co.*, *Ibid* 48; *The Great West. Railway Co.* v. *Rushout*, 5 *De Gex and Small*, 290, (10 *Eng. Law and Eq.* 72); *Simpson* v. *Denison*, 10 *Hare* 51, (16 *Jur.* 828).

The rule seems to be well settled in England, that a court of equity will not, either at the instance of a stockholder or of a third party, restrain a corporation from applying to parliament for an alteration of its charter.

As has been already intimated, the *jurisdiction* of the Court of Chancery to restrain a party from petitioning parliament for or against a measure, has been repeatedly affirmed by the English Chancellors. Thus, in *The Stockton and Hartlepool Railway Company* v. *The Leeds and Thirsk and The Clarence Railway Companies*, Lord Cottenham said: "There is no question whatever about the jurisdiction; a party who comes to oppose a railway bill in parliament, does so solely in respect of his private interest, not as representing any interest of the public, or for the purpose of communicating any information to parliament. This court, therefore, if it sees a proper case connected with private property or interest, has just the same jurisdiction to restrain a party from petitioning against a bill in parliament as if he were bringing an action at law, or asserting any other right connected with the enjoyment of the property or interest which he claims." And in the earlier case of *Ware* v. *The Grand Junction Water Works Company*, Lord Chancellor Brougham said: "It is quite idle to represent this as an attempt to restrain by injunction the proceedings of parliament."

It will be freely admitted that the injunction operates directly, not upon the legislature but upon the party enjoined, and in no wise interferes with the exercise by the legislature of its rightful powers. But I cannot resist the conviction that such exercise of power, under our form of government, is an infringement of the rights of the people and of their representatives. If not a direct infraction of the bill of rights and of the letter of the constitution, it is in conflict with the spirit of republican government and the structure of its institutions. Every citizen has an unquestioned right to petition either branch of the legislature upon any subject of legislation in which he is interested. Every legislator has a

right to be informed of the views and wishes of all parties interested in the enactment of a law. This right to perfect freedom of intercourse between the representative and his constituents is not founded upon any constitutional provision or bill of rights, but springs from the very structure of the government. By what authority shall this court step between the representative and his constituents, and deny to the one or the other the exercise of his political rights in their fullest freedom? It is conceded that the legislative powers cannot be trammeled by injunction. The legislature can neither be restrained from legislating upon any subject, nor from exercising their authority to obtain information upon any matter of legislation. And if the legislature cannot be restrained from asking the information, can the citizen be restrained from giving it? Are the rights of the representative more sacred than those of his constituents? It appears to me that the granting of such injunction is an unauthorized abridgment of the political rights of the party enjoined. The proper office of courts of of justice is to maintain and enforce the legal and equitable rights of parties litigant, as established by existing law. It is no part of their office to determine in advance what laws ought or ought not to be enacted, or to interfere, directly or indirectly, with the course of legislation.

The complainant's bill is framed upon the theory that the charter of an incorporated company cannot be altered in any essential particular, even with the consent of the corporation, without the consent, express or implied, of every stockholder; and that such alteration would be unconstitutional, as impairing the obligation of the contract entered into between the state and such stockholder. If this doctrine should be admitted in its fullest extent, it is not perceived that it can affect the result of the present application.

When the charter of the Jersey City and Bergen Point Plank Road Company, of which the complainant claims to be a stockholder, was granted, it was provided by a general law of the state that the charter of every corporation granted by the legislature should be subject to alteration, suspension

and repeal, in the discretion of the legislature. The legislature, therefore, in granting the charter to the plank road company, must be deemed to have reserved to themselves the right of altering, suspending, or repealing the charter, whenever, in their discretion, the public good might require it, as fully as if the reservation were inserted in the charter. And all the contracts, express or implied, resulting from the act of incorporation and its acceptance by the stockholders, must be deemed to have been entered into by both parties, subject to that reservation. Whatever limitation may exist to the reserved right of the legislature to alter or repeal the contract, I am clear that the reservation is in itself valid, and that this court ought not, upon a motion for a preliminary injunction, to pronounce any alteration, suspension, or repeal of the charter to be unconstitutional or illegal. Much less should this court make such declaration in advance of any actual legislation.

The plank road company were incorporated with power to construct a plank road upon an ancient public highway and with the franchise of taking tolls thereon. No limit is fixed for the duration of the charter. The legislature have since incorporated a company to construct a horse railroad between the same *termini*. They have authorized the railroad company to purchase the plank road. They have also authorized the plank road company to lay rails upon their track. They have, however, provided that if the plank road is purchased by the railroad company, the plank road shall be continued; and if the rails are laid thereon by the plank road company, they shall be so laid as not to hinder or obstruct public travel. It must be presumed that the public convenience demanded the increased facility to be afforded by the construction of the railroad. Of that the legislature were the peculiar exclusive judges.

The complainant, a stockholder in the plank road company, now asks that the company shall be restrained from making any application to the legislature to abandon or change any part of their route, for this, it is insisted, would be fundamen-

tally changing the objects of the company without his consent; and that the railroad company, its officers, stockholders and promotors, shall be enjoined from aiding and abetting such application. If this claim have any foundation in law or in equity, which is by no means admitted, and if it be recognized, it would place it in the power of a single stockholder, for his own pecuniary interest, against the wish of every other stockholder and the convenience of the whole community interested in the line of travel, to prevent even a petition for a change.

The injunction is denied without costs.